KERR, ADMR., v. BOUGHER ET AL., BOARD OF COM-
MISSIONERS.

*Negligence—County commissioners—Public highways—Duty to erect guard rails, when—Section 7563, General Code—"Wash bank" construed.*

1. The words "wash bank" in Section 7563, General Code, mean a bank composed of such substance that it is liable to be washed away by the action of the water thereon, so as to become unsafe to travelers on such highway.
2. The county commissioners are not required under Section 7563, General Code, to protect by guard rails banks immediately connected with or adjacent to a public highway unless they have a perpendicular drop of more than eight feet from the surface of the highway and are composed of such substance that they may be washed away by the action of water thereon so as to be unsafe for travel on such highway.

(Decided May 19, 1922.)

ERROR: Court of Appeals for Jefferson county.

*Mr. M. H. Francis* and *Mr. Lee Van Tilburg,* for plaintiff in error.

*Mr. E. S. Pearce* and *Mr. A. W. Moreland,* for defendant in error.

POLLOCK, J. The parties stand in this court as they stood in the court below. Frank H. Kerr, as administrator of the estate of William Batman, brought an action in the court of common pleas of Jefferson county against the county commissioners, charging that the death of his intestate was caused by the negligence of the commissioners in failing to protect, by proper guard rails, a perpendicular bank along a public highway in this county. The

defendant joined issue by answer, denying negligence in failing to guard the road along this wall. The case was tried in that court resulting in a verdict in favor of the defendant. This action is prosecuted to reverse that judgment.

Stanton boulevard is a public highway or street extending in a northerly and southerly direction through the city of Steubenville and continuing to the city of Toronto, Jefferson county. Within the city limits, but near the northern line thereof, there is on the east side of this highway a perpendicular stone wall varying in height from three to twelve feet. An electric street car line extends along this highway, located near the east side of the street. The street is paved with brick, extending from its west side across the street car track to the east side of the street. The top of this stone wall is about flush with the pavement.

On the fifth of July, 1921, Batman was riding in a truck operated by another. They were traveling north on the boulevard. The driver of the truck claims that he was driving the machine near the west side of the pavement when one of the front wheels of the truck struck some obstruction, or hole in the pavement, and the machine was projected out of its course east across the street car track and over this stone wall. The accident caused the death of Batman. At the place where the truck left the pavement the stone wall was perpendicular and more than eight feet in height. It is conceded that the defendants had not protected the traveler on this highway by erecting any guard rails along this wall at the place where the accident occurred.

Plaintiff claims that Section 7563, General Code, required the commissioners to place guard rails

along this stone wall where it was more than eight feet in height, to protect travelers; that the failure of the commissioners to perform this statutory duty requires the county under the provision of Section 7565 to respond in damages for the death of plaintiff's intestate.

Section 7563, so far as it refers directly to the question now under consideration, reads as follows:

"The board of county commissioners * * * shall also protect, by suitable guard rails, all perpendicular wash banks more than eight feet in height, where such banks have an immediate connection with a public highway, or are adjacent thereto, in an unprotected condition, * * *."

Under this section the commissioners shall protect all perpendicular wash banks more than eight feet in height. In order to require them to act the bank must be more than eight feet in height, perpendicular, and also a wash bank.

The legislature, by the use of the words "wash bank" intended to limit the kind of a bank that should be guarded, and did not intend to require that every bank immediately connected with or adjacent to the public highway, that had a drop of more than eight feet should be guarded.

The prior part of this section requires that the county commissioners shall provide guard rails on each end of a county bridge, viaduct or culvert more than five feet high, and also on each side of the approach to a county bridge, viaduct or culvert, if such approach or embankment is more than six feet high. Under the above provision the legislature did not use any limiting words, but the ends of all bridges, viaducts, or culverts, and the approaches, which exceed the designated number of feet, must

be guarded; while in the provision that we are now considering the legislature limited the requirement to wash banks.

The provision of this section which is now before us was before the supreme court in the case of *Board of County Commissioners of Wyandot County* v. *Boucher,* 98 Ohio St., 263.

In that case the court held that only perpendicular banks of more than eight feet were required to be guarded. It further said that "Section 7563, being in derogation of the common law, is not to be extended beyond the plain meaning of its terms."

The court did not define the words "wash bank," but under the principle above announced the words must be limited to their plain meaning.

The court of appeals of Wyandot county also reported this case, 27 C. C. (N. S.), 184. That court in the second proposition of the syllabus defined wash bank as follows: "The term 'wash bank' is used to indicate a bank with its top lying adjacent to or connected with the surface of a road and running down therefrom to its base, in contradistinction from a bank whose base is in the plane of the surface of the road and running upward."

We have great respect for the ability of this court, but hardly think that the legislature thought it necessary to use the words "wash bank" in order to notify the commissioners that they were not required to guard a bank the top of which was more than eight feet above the surface of the road.

When we look in Webster's Dictionary for the meaning of the word "wash," we find that it has many different meanings, depending upon the connection in which the word is used. We find the following:

"To waste or abrade by the force of water in motion; as, heavy rains *wash* a road or an embankment.   *   *   *

"To be eroded or worn away by the action of water, as by a stream or by the sea;—said of a road, a beach, etc.   *   *   *

"A piece of ground washed by the action of a sea or river, or sometimes covered and sometimes left dry;   *   *   *."

Keeping in mind these definitions of the word "wash," we think the intention of the legislature in the use of the words "wash bank" in this section can be determined. These words in the connection in which they are used in the section of the General Code under consideration have reference to a bank composed of such substance that it is liable to be washed away by the action of water thereon, so as to become unsafe to travelers on the highway. The commissioners are required to guard only such bank as from the substance composing it, whether earth, gravel, sand or other substance, is subject to the action of water, either from a stream running along the side of the bank or by rainfall, in such manner that the sides of the road may become unsafe for travelers thereon, either from a cavity being washed under the road or the bank being washed away. If such a bank is immediately connected with or adjacent to a public highway, and is more than eight feet in height, the commissioners are required under the provision of Section 7563 to erect suitable guard rails thereon, and if they fail to perform this duty the county under the provisions of Section 7565 is liable for the damages that proximately occur by reason thereof.

In the case before us the bank was a heavy substantial stone wall, built along this highway so that the rain and water had no effect in washing away the road, and no effect in any way upon the bank. We think the place where the accident occurred was not one of the kind along which the commissioners are required to place a guard rail. There are some other errors complained of in the record, but if the commissioners were not required to place a guard rail along this embankment the county was not liable for this accident.

The judgment of the court below is affirmed.

*Judgment affirmed.*

FARR, P. J., and ROBERTS, J., concur.